Exhibit 3

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK : IAS PART 4**

---

Application of DANIEL MOLONEY, TEMPEST REALTY CORP., LIFFEY VAN LINES, INC., and ROSE REALTY CORP.,

Petitioners,

For an Order Pursuant to Article 75 of the New York Civil Practice Law and Rules staying Arbitration of a certain controversy at the American Arbitration Association,

-against-

SHAMROCK BUILDING SYSTEMS, INC.,

Respondent.

Index No. 103822/05

Motion Seq. 005

**JUDGMENT**

UNFILED [illegible]
This judgment has not [illegible] by the County Clerk and notice of entry can[illegible] based hereon. To obtain entry, counsel [illegible] representative must appear in person [illegible] Desk (Room 141B).

---

**KIBBIE F. PAYNE, J.:**

In this CPLR article 75 proceeding, respondent Shamrock Buildings Systems, Inc. (Shamrock) moves pursuant to CPLR 4403 for a judgment modifying the report of a special referee to compel petitioners Tempest Realty, Liffey Van Lines, Inc. and Rose Realty Corporation to proceed to arbitration. Petitioners cross-move to confirm the report. For the reasons stated below, this court grants Shamrock's motion to a limited extent, denies the cross-motion and denies in part the petition to stay arbitration.

Moloney is the president of Tempest Realty, Liffey Van Lines and Rose Realty. Tempest Realty has no employees, and Rose Realty has three employees, including Moloney and his wife. In

2003, Moloney and Shamrock, a general contractor, met to discuss the construction of a new building to be known as 234 East 121st Street, New York, New York. The planned structure was to sit on tax block 1785, lot numbers 34, 36, 37 and 38. Rose Realty owns lot 34, and Tempest Realty owns lot numbers 36, 37 and 38. Prior to the construction, 234 East 121st Street was a structure limited to lot 34.

On September 25, 2003, Shamrock and Moloney entered into an "Abbreviated Standard Form of Agreement Between Owner and Contractor . . ." for the project described as "234 East 121st Street, New York, New York." The contract's first page provided a space for the "name, address and other information" of "the Owner." Shamrock and Moloney left that information blank. On the contract's signature page, however, Moloney signed his name under the description "OWNER" (emphasis in original). Although the signature line asked for the signatory's "printed name and title," Moloney provided his name without any qualification.

The contract states that "[t]he Owner shall pay the Contractor [$3,285,000.00] in current funds for the Contractor's performance of the Contract." For its work, Shamrock received the majority of payments from Moloney personally, Liffey Van Lines, Rose Realty and non-party Donovan & Giannuzi, LLP, attorneys for Moloney. Correspondence between Moloney and Shamrock on the project referred to Moloney at both the offices

of Rose Realty or Liffey Van Lines.

After completion of the contract, a dispute arose regarding extra work payments. Pursuant to the arbitration provision in the contract, Shamrock commenced an arbitration proceeding before the American Arbitration Association against Moloney, individually, Tempest Realty, Liffey Van Lines and Rose Realty.[1] In response to the demand, petitioners commenced this CPLR article 75 proceeding, by order to show cause and petition, to permanently stay arbitration between them and respondent. Petitioners argued that the arbitration agreement exists between Rose Realty and Shamrock only, not between all petitioners and Shamrock. Petitioners reason that Rose Realty owned lot 34, known as 234 East 121st Street when the contract was executed, and therefore Moloney could not have signed the contract on behalf of any other corporate petitioner.

Petitioners' motion was held in abeyance, pending a special referee report on the following issues: (1) whether Moloney executed the construction contract as an individual and/or officer of one or more of the remaining petitioners and

---

[1] Article 9.10.4 of the contract provides in petinent part:

> "Claims, disputes and other matters in question arising out of or relating to the Contract that are not resolved by mediation . . . shall be decided by arbitration . . . ."

(2) whether a basis exists for imputing the intent to arbitrate on Tempest Realty, Liffey Van Lines and Rose Realty (see TNS Holdings, Inc. v MKI Securities Corp., 92 NY2d 335, 339 [1998] [explaining, by analogy to the piercing of the corporate veil, the limited circumstances where it is necessary for the court to impute the intent to arbitrate to a nonsignatory of an agreement to arbitrate]).[2] The special referee report and recommendation, among other things, concluded that Moloney executed the contract on behalf of Rose Realty and, as conceded by Rose Realty, it is bound to arbitrate. Determining that Tempest Realty and Liffey Van Lines where nonsignatories to the agreement, the referee concluded that no grounds exist for subjecting them to arbitration.

Shamrock now moves pursuant to CPLR 4403 to modify the referee's report to add Tempest Realty and Liffey Van Lines as parties bound by the contract, and to delete those portions of the report purporting to find that certain work performed by Shamrock fell outside the construction contract. Shamrock does not challenge the report's determination that Moloney did not sign the contract in his individual capacity and that the intention to arbitrate should not be imputed on Tempest Realty or

---

[2] The court referred an additional issue concerning petitioner-intervenor Allied Van Lines, Inc. However, Shamrock and Allied Van Lines entered a stipulation of discontinuance with prejudice, rendering that question academic.

Liffey Van Lines (see e.g. TNS Holdings, Inc., 92 NY2d 335). Petitioners cross-move for confirmation of the referee's report.

This case presents a question of contract interpretation, the scope of the term "owner" as used in the parties agreement. "In cases of contract interpretation, it is well settled that when parties set their agreement in a clear, complete document, their writing should . . . be enforced according to [the plain meaning of its] terms" (South Road Assocs., LLC v International Business Machines Corp., 4 NY3d 272, 278 [2005] [quotations and citations omitted]). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (Greenfield v Philip Records, Inc., 98 NY2d 562, 569 [2002]). However, where, as here, the document is ambiguous, the court may consider extrinsic evidence to determine the meaning of its terms (see id. [providing that a contract is unambiguous where it uses language with "'a definite precise meaning . . . to which there is no reasonable basis for a difference of opinion'"]; see also South Road Assocs. at 278).

The ambiguity in the subject contract arises from the failure of Moloney and Shamrock to provide a name or address for the term owner, and Moloney's failure to identify the capacity under which he provided his signature. The term is further confused by the several sources, under Moloney's control, which

rendered payment to Shamrock for its construction work. Owner does not clearly refer to Rose Realty by virtue of its deed to former 234 East 121st Street on lot 34. As a project, "234 East 121st Street" concerned a planned structure on lot 34 and Tempest Realty's lots. Thus, when the contract refers to the owner of the project property, it necessarily refers to both Rose Realty and Tempest Realty. Moloney signed the contract in his capacity as president of these corporations. Acting as the president Rose Realty alone, Molney could not have authorized the substantial construction on lots 36, 37 and 38. Although Tempest Realty issued no checks payable to Shamrock for the construction, the payment of bills is not dispositive as to actual ownership of the subject property.

Liffey Van Lines, however, is not an owner of any of the lots at issue; it is a lessee of the new building. Therefore, it could not have been the intention of Shamrock and/or Moloney to include Liffey Van Lines as a signatory to the arbitration agreement as owner or otherwise. Shamrock's reliance on Newburger v American Surety Co. (242 NY 134, 143 [1926]) for a contrary result is unavailing. That case is distinguishable, and does not concern a nonsignatory to a contract containing an arbitration clause. CPLR 7501 requires that an agreement to arbitrate be in writing with limited exceptions not argued here (see generally TNS Holdings, 92 NY2d 335).

That portion of the referee's report which determined that some of the work performed by Shamrock "was not done under the Agreement" and otherwise purported to determine the merits of the underlying dispute is struck as outside the scope of the reference and within the province of the arbitral tribunal.

Accordingly, it is

ORDERED that respondent's motion pursuant to CPLR 4403 to modify the referee's report is granted to the extent indicated above; and it is further

ORDERED that petitioners cross-motion pursuant to CPLR 4403 to confirm the referee's report is denied; and it is further

ORDERED that petitioners' underlying motion for a stay of arbitration pursuant to CPLR article 75 is granted to the extent that the arbitration is permanently stayed as to Daniel Moloney in his individual capacity and Liffey Van Lines, and the motion is otherwise denied; it is further

ORDERED that petitioners Rose Realty and Tempest Realty proceed to arbitration with Shamrock; and it is further

ORDERED that petitioner shall serve a copy of this judgment with notice of entry on the arbitral tribunal within 20 days of its entry.

The foregoing constitutes the decision and judgment of the court.

DATE: MAY 16 2006

Kibbie F. Payne, J.S.C.

UNFILED JUDGMENT

This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).